UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------X
                                        :

UNITED STATES OF AMERICA,           :

                                 :         17-CR-204 (JMF)

            -v-                  :

                                 :       MEMORANDUM OPINION

DARIEL LOPEZ,                 :         AND ORDER

                                 :

                      Defendant.      :

                                 :

------------------------------------------------------------------------X

JESSE M. FURMAN, United States District Judge:

Defendant Dariel Lopez, who (factoring in good-time credit) has served almost 85% of his sentence for a non-violent drug offense, moves for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A). *See* ECF No. 129; *see also* ECF No. 130 ("Def.'s Mem."). As amended by the First Step Act, the compassionate release statute provides that the Court "may reduce" a defendant's term of imprisonment "if it finds that . . . extraordinary and compelling reasons warrant such a reduction" and that "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission" and the sentencing factors set forth in 18 U.S.C. § 3553(a). *See* 18 U.S.C. § 3582(c)(1)(A)(i); *see also United States v. Brookner*, 976 F.3d 228, 233-37 (2d Cir. 2020).[1] Upon review of the parties' submissions, the Court finds that all of these requirements are met and, thus, GRANTS Lopez's motion.

First, as this Court and others have concluded, the threat of COVID-19 to those in prison, by itself, constitutes an extraordinary and compelling reason for compassionate release. *See, e.g.*, *United States v. Pacheco*, No. 12-CR-408 (JMF), 2020 WL 4350257, at *1 (S.D.N.Y. July

---

[1]      The statute also imposes a mandatory exhaustion requirement, *see* 18 U.S.C. § 3582(c)(1)(A), which — as the Government concedes — Lopez has satisfied. *See* Def.'s Mem. 6 & n.26; ECF No. 133 ("Opp'n"), at 3-4.

29, 2020) (citing cases).  As the Court has noted, "[t]hose detained in jails and prisons face particularly grave danger" from the pandemic and, "[r]ealistically, the best — perhaps the only — way to mitigate the damage and reduce the death toll is to decrease the jail and prison population by releasing as many people as possible."  *United States v. Nkanga*, 450 F. Supp. 3d 491, 492 (S.D.N.Y. 2020).  Indeed, as of June 6, 2020, the "COVID-19 case rate for prisoners was 5.5 times higher than the US population case rate" and that "the adjusted death rate in the prison population was 3.0 times higher than would be expected if the age and sex distributions of the US and prison populations were equal."  Brendan Saloner, et al., *COVID-19 Cases and Deaths in Federal and State Prisons*, JAMA (July 8, 2020), *available at* https://jamanetwork. com/journals/jama/fullarticle/2768249.  And since then, conditions — in and out of prisons — have gotten considerably worse.  *See* Def.'s Mem. 4-5; ECF No. 137 ("Reply"), at 3-4.[2]

Thus, Lopez's motion turns on the other statutory requirements — namely, the Section 3553(a) factors and applicable policy statements.  *See Pacheco*, 2020 WL 4350257, at *2.  On balance, the Court concludes that these factors weigh in favor of granting Lopez's motion. Among other things, Lopez has served the vast majority of his sixty-month sentence; the conditions of his confinement for the last nine plus months — which have included any number of serious restrictions designed to stem the spread of the virus, *see* Opp'n 4-6 — have been harsher than normal; he has completed drug treatment and anger management programs; he has completed over 450 hours of courses and programs while detained and, but for the pandemic,

---

[2]     Lopez argues that he is at higher risk in the event he were to contract COVID-19 because he has asthma.  *See* Def.'s Mem. 5-6.  That may be true, although the Government notes that Lopez's asthma "appears to be well-controlled" and that asthma no longer ranks among the Centers for Disease Control's "highest-risk" medical conditions.  Opp'n 4.  The Court need not decide the matter because, either way, Lopez satisfies the threshold requirement of showing that there is an extraordinary and compelling reason justifying his release.

likely would have obtained a GED; his offense was a non-violent drug offense, and may well have been related to his own drug use; he had no prior criminal history and a history of employment; he has maintained contact with his family; and he has employment opportunities upon his release.  *See* Def.'s Mem. 9-12; Reply 7-8.[3]  In short, "[d]ue to the COVID-19 pandemic, the 'history and characteristics of the defendant' and 'the need for the sentence imposed . . . to reflect the seriousness of the offense . . . and to protect the public from further crimes of the defendant,'" weigh in favor of shortening Lopez's sentence by a few months. *Pacheco*, 2020 WL 4350257, at *2 (quoting 18 U.S.C. § 3553(a)).

In short, Lopez's motion is GRANTED.  More specifically, the Court orders that:

(1)    Lopez's sentence of incarceration is reduced to time served pursuant to 18 U.S.C. § 3582(c)(1)(A);

(2)    Lopez is ordered released from Bureau of Prisons custody, effective immediately; and

(3)    Lopez shall serve three years of supervised release, subject to the conditions of supervised release set forth in the Judgment dated January 18, 2018, *see* ECF No. 77, modified as follows:

(a)    Lopez shall serve six months of supervised release on home confinement, to be enforced by GPS monitoring, at a residence approved by the Probation Department;

(b)    Lopez shall promptly travel from FCI Williamsburg to Brooklyn, New York, wearing a mask en route, and shall self-quarantine in his parents' home (or another location approved by the Probation Department) for fourteen days;

(c)    Unless the Probation Department directs otherwise, Lopez is to report to the Probation Department at 500 Pearl Street, 6th Floor, New York, New York, at **10:00 a.m. fifteen days after his arrival in New York** to have the GPS

---

[3]     Although the Government does not press the point, it does note that a firearm was found in the apartment where Lopez was arrested.  Opp'n 1-2.  The record, however, indicates that the firearm belonged to another member of the conspiracy; there is no suggestion in the record that Lopez ever used it.  Notably, Lopez appears to have admitted during a safety valve proffer that he once put the gun away in the safe where it was found — an admission that apparently doomed his qualification for the safety valve.  *See* ECF No. 80, at 7-8.

tracker affixed to his ankle;

(d) While on home confinement, Lopez must remain at his approved residence except to seek any necessary medical treatment, in each instance with prior notice and approval by the Probation Department; and

(e) Lopez must possess or have access to a telephone that will allow him to video-conference with the Probation Department.

The Government shall immediately notify the Bureau of Prisons of this Order. The Clerk of Court is directed to terminate ECF No. 129.

SO ORDERED.

Dated: December 28, 2020
       New York, New York

_____
JESSE M. FURMAN
United States District Judge